# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

KENNETH THOMAS GONZALES,

    Plaintiff,

vs.                                                      Civ. No. 19-93 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14) filed April 18, 2019, in support of Plaintiff Kenneth Thomas Gonzales' Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. On June 17, 2019, Plaintiff filed his Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum. Doc. 17. The Commissioner filed a Brief in Response on September 16, 2019, Doc. 21, and Plaintiff filed a Reply on September 30, 2019, Doc. 22. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 6, 7.

**Background and Procedural Record**

Claimant Kenneth Thomas Gonzales suffers from the following severe impairments: Post-traumatic stress disorder; Depressive disorder; Lumbar Spinal Stenosis; Lumbar Degenerative Joint Disease; and Bilateral Knee Degenerative Joint Disease s/p Bilateral Knee Replacements. Administrative Record ("AR") at 15. He alleges that he became disabled as of July 8, 2015. AR 13. He worked as a police officer and captain for twenty years until 2010. AR 42, 45. He was a part-time baseball coach until about 2015 and delivered mail part-time until May 2016. AR 45-48. He is a veteran with a 100% service-connected disability rating from the Department of Veterans Affairs ("VA"). AR 230-31.

On July 7, 2017, Mr. Gonzales filed for disability insurance benefits under Title II. AR 64. His application was denied initially on September 19, 2017, AR 64, and upon reconsideration on November 13, 2017, AR 78. Administrative Law Judge ("ALJ") Eric Weiss conducted a hearing on May 22, 2018. AR 37. Mr. Gonzales appeared in person at the hearing with attorney representative Gary Martone. *Id*. The ALJ took testimony from Mr. Gonzales and an impartial vocational expert, Kola L. Brown. AR 37, 359. On August 29, 2018, ALJ Weiss issued an unfavorable decision. AR 10-36. The Appeals Council denied review on November 30, 2018, AR 1, rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review. Mr. Gonzales appealed to federal court on February 1, 2019. Doc. 1.

**Applicable Law**

A. <u>Disability Determination Process</u>

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

3

> RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## **Analysis**

Mr. Gonzales raises two arguments in support of his motion to remand: (1) the ALJ was required to consider his VA disability rating and explain why it was not persuasive, Doc. 17 at 5-9; and (2) the ALJ was required to engage in a substantive analysis of whether a significant number of jobs exist that Mr. Gonzales can perform in the national economy, Doc. 17 at 9-10. The Court rejects both arguments. Mr. Gonzales' first argument depends on a body of case law and regulations that the Social Security Administration has since amended, and the new version

does not require an ALJ to analyze decisions of other governmental agencies. Second, the Court holds that ALJs are not required to engage in a substantive analysis of whether a significant number of jobs exist in the national economy, as opposed to the regional economy.

    A.    <u>The ALJ Was Not Required To Analyze The VA Rating Decision.</u>

Mr. Gonzales served in the United States Marine Corps from April 3, 1989 to February 8, 1991 and received an honorable discharge. AR 167, 230. Mr. Gonzales has received a rating of 100% service-connected disability from the VA. AR 230-31. He was given a 70% disability rating for PTSD effective March 13, 2104. AR 160, 169-70. He was given a 30% disability for his left knee effective February 1, 2018; 30% for his right knee effective May 1, 2017; and 40% for degenerative joint disease with stenosis effective February 1, 2016. AR 171-73, 192-94.

The ALJ explained:

> As for the opinion evidence, I give limited weight to the ratings from the Department of Veterans Affairs, dated May 17, 2017 and October 30, 2017, that that the claimant is "unemployable due to his service-connected disabilities" including "service-connected posttraum[a]tic stress disorder with bilateral total knee replacement and degenerative disc disease." The disability determination processes utilized by the Department of Veterans Affairs and the Social Security Administration are fundamentally different. Department of Veterans Affairs does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Social Security Regulations. Thus, a disability rating by the Department of Veterans Affairs is of little probative value in these proceedings.

AR 26 (citations omitted).

Mr. Gonzales argues that this analysis is insufficient and requires remand under published Tenth Circuit precedent. Doc. 17 at 7. He primarily relies on *Grogan v. Barnhart*, a case that arose from a claimant's appeal of an ALJ's non-disability determination. 399 F.3d 1257, 1261 (10th Cir. 2005). There, the Tenth Circuit first determined that the ALJ did not "engage Grogan's argument that, on the basis of the same medical evidence, the Veterans'

Administration had found him to be significantly disabled from a slipped vertebra before the end of his insurance window with the Social Security Administration." *Id*. The Tenth Circuit then concluded "it was reversible error for the ALJ to have failed to recognize that the VA had found Grogan to be seriously disabled." *Id.* at 1262. In so doing, the Tenth Circuit recognized that "[a]lthough another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive." *Id.* The Tenth Circuit also relied on 20 C.F.R. § 416.912(b)(5), which "defin[ed] the disability determinations of other agencies as evidence to be considered by the Social Security Administration." *Id.* at 1263.

Mr. Gonzales also cites *Baca v. Department of Health & Human Services*, which involved the loss of records relevant to the question of a claimant's disability. 5 F.3d 476, 478 (10th Cir. 1993). The claimant in that case "testified that he had been treated at the VA since the early 1970's and that he received a service connected disability rating of one hundred percent in 1978." *Id*. The claimant, however, was unable to submit pre-1978 records to the ALJ because the VA did not provide them. *Id.* And, although those records had been submitted to the SSA in connection with two earlier SSA disability applications, the SSA was also unable to locate them. *Id.* The ALJ concluded this did not matter because "the VA records began more than a year after expiration of his insured status and [] a claimant's testimony alone could not establish a disability." *Id.* The Tenth Circuit disagreed, noting that the ALJ has an "especially compelling" duty to develop the record when the SSA is, in part, "responsible for the lack of medical evidence regarding the relevant time period." *Id.* at 480.

7

In deciding *Baca* and *Grogen*, however, the Tenth Circuit considered regulations[4] no longer in effect. The regulations the Tenth Circuit considered in those cases provided that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504 (effective prior to March 27, 2017). Regulations in effect at the time further provided:

> Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim.
>
> Evidence includes, but is not limited to:
>
> . . .
>
> Decisions by any governmental or nongovernmental agency about whether or not you are disabled or blind (see § 416.904) . . . .

20 C.F.R. § 404.1512(b)(1)(v) (effective prior to March 27, 2017). In addition to the above no-longer-in-effect regulations that existed at the time the Tenth Circuit issued *Baca* and *Grogan*, the Administration adopted the holdings in these cases through a Social Security Ruling ("SSR") that is also no longer in effect. That rule stated:

> However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).

---

[4] The Tenth Circuit cited 20 C.F.R. § 416.904 and § 416.912, which pertain to applications for supplemental security income under Title XVI. Mr. Gonzales' application is for disability insurance benefits under Title II, but the relevant regulations under Title II and Title XVI are identical.

These outdated regulations, however, provide little guidance because the Administration has significantly altered those regulations. Section § 404.1504, effective for all claims filed after March 27, 2017, now indicates that

> in claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim . . . .

20 C.F.R. § 404.1504 (2019). And § 404.1512 was amended to remove the decisions of other agencies from definition of "evidence" that the Administration will consider. *See* 20 C.F.R. §§ 404.1512, 404.1513 (2019).

Because Mr. Gonzales filed his application for benefits after March 27, 2017, the ALJ was required to apply the new versions of these regulations when he adjudicated Mr. Gonzales' claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5864 (Jan. 18, 2017). Therefore, neither the Tenth Circuit's interpretation of the old versions of 20 C.F.R. § 404.1504 and § 404.1512 in *Grogan* nor SSR 06-03P control the ALJ's duty in this case. Under the new version of the regulations, the ALJ is not to evaluate, analyze, or articulate the persuasiveness of the VA's disability rating; rather, his duty is to evaluate all of the evidence in Mr. Gonzales' case, including the evidence underlying the VA's rating decision.

In his opening brief, Mr. Gonzales did not argue that the VA failed to evaluate all of the medical evidence. *See generally* Doc. 17. Rather, he described some of the evidence underlying the VA rating decision and argued that the VA and the SSA disability processes share enough similarities that an ALJ should find a VA rating decision persuasive. *E.g.*, Doc. 17 at 8-9. But this argument fails in light of the new rules explicitly stating that an ALJ will *not* analyze a VA rating for its persuasiveness.

In his reply brief, Mr. Gonzales appears to abandon his argument that the ALJ should have analyzed whether the VA rating was persuasive, as he agrees that the new regulation applies to his case. *See* Doc. 22 at 2. Instead, he changes course and argues that "the ALJ erred by failing to consider the underlying evidence the Veteran's Administration considered in making the disability rating." *Id.* This argument was not presented in his opening brief. Therefore, it is waived. *Kruse v. Astrue*, 436 F. App'x 879, 885 (10th Cir. 2011) ("[a]rguments presented for the first time in a reply brief are waived"); *Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (waiver principles developed in other litigation contexts are equally applicable to social security cases).

Even if not waived, however, this argument would not prevail. Mr. Gonzales argues that "[t]he ALJ did not address Mr. Gonzales' difficulties with memory loss, panic, impaired impulse control, difficulty adapting to stress, difficulty adapting to work, and difficulty establishing effective work relationships." Doc. 22 at 4. That is not quite true. The ALJ acknowledged Mr. Gonzales' reports of "experiencing a traumatic event while deployed and having nightmares about the event"; "being easily irritated and taking things out on others, having memory lapses, being uncomfortable in large crowds, and isolating himself from others"; and "nightmares, avoidance of negative stimuli, hypervigilance, and detachment." AR 23. The ALJ explained that the limitations in the RFC were "supported by the claimant's observed anxious, depressed, or irritable mood and his reports of significant anger issues." AR 29. And in his narrative, the ALJ explained at length why Mr. Gonzales could nonetheless perform unskilled work, detailing the many medical records which document improvement in Mr. Gonzales' PTSD symptoms. AR 23-26.

Mr. Gonzales, however, contends that his improvement in group therapy sessions is not probative of whether Mr. Gonzales can perform work, so the ALJ should not have relied on the therapy session notes. Doc. 22 at 3-4. Mr. Gonzales' only authority for this proposition is SSR 85-15, which advises ALJs that a person's response to stress is highly individualized, and therefore "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." 1985 WL 56857, at *6. But SSR 85-15 does not address what kind of evidence an ALJ can look to in order to fashion an individualized RFC responsive to mental impairments; instead, it simply advises that the RFC must be individualized and responsive to mental impairments. Mr. Gonzales' argument that an ALJ cannot consider notes from medical providers about the improvement in his PTSD symptoms also defies logic. This sort of medical evidence is relevant and precisely what an ALJ must consider and discuss. 20 C.F.R. § 404.1513; *cf. DeFalco-Miller v. Colvin*, 520 F. App'x 741, 747 (10th Cir. 2013) (a documented improvement in therapy sessions is inconsistent with an RFC for extreme mental limitations precluding all work).

For its part, the Commissioner confesses that it was error for the ALJ to discuss the VA rating decision at all. Doc. 21 at 14. The Court disagrees that an ALJ's simple mention of a VA rating decision constitutes error. The new regulation does not *prohibit* an ALJ from acknowledging VA ratings; it merely says that the Administration will not "provide any analysis." 20 C.F.R. § 404.1504. The Court finds that the ALJ here did not provide any analysis (which is, after all, Mr. Gonzales' primary complaint on appeal). The ALJ mentioned the VA rating decision only in order to explain that it lacks probative value in SSA proceedings. AR 26. This comment is accurate. The Court therefore does not engage in a harmless error analysis.

Because the ALJ properly followed the applicable regulations, the Court affirms.

B.     The ALJ's Step Five Finding Is Supported By Substantial Evidence.

At step five, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Mr. Gonzales argues that the ALJ's finding at step five is not supported by substantial evidence in this case. The VE identified 51,000 jobs nationally that Mr. Gonzales could perform based on his RFC. AR 30. Mr. Gonzales argues this number is not significant because the identified jobs are "'isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live.'" Doc. 17 at 9 (quoting 20 C.F.R. § 404.1566(b)). Mr. Gonzales further argues that the ALJ was required, but failed, to analyze whether these jobs were suitable for Mr. Gonzales in this case based on a set of factors identified by the Tenth Circuit in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

The Court disagrees. A finding of the number of regional jobs was not made in this case and therefore the question of whether those jobs are "isolated" is not at issue. The ALJ's decision is premised on the expert testimony of a vocational expert and this testimony constitutes "substantial evidence" in support of the ALJ's decision. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155-56 (2019). The vocational expert testified to the number of jobs existing in the national economy (see AR 60-61) and it is proper for the ALJ to solely consider that national figure in his or her determination pursuant to 42 U.S.C. § 423(d)(2)(a). *See Raymond v. Astrue*, 621 F.3d 1269, 1274 & n.2 (10th Cir. 2009) (concluding that "the proper focus generally must be on jobs existing in the national, not regional, economy").

This distinction is significant because the *Trimiar* decision focused on jobs available in the regional economy. 966 F.2d at 1330. Accordingly, many of the *Trimiar* factors are specifically directed toward the analysis of jobs available in the regional economy such as "the distance that the claimant is capable of travelling to engage in the assigned work" and "the

isolated nature of the jobs." *Id.* Such factors would have little to no bearing on the analysis of nationally available jobs. And the VE is not required to testify as to the number of available regional jobs. *Raymond*, 621 F.3d at 1274 n.2.

The Commissioner is correct that, because the ALJ found 11,700 jobs to be a significant number, this Court's role is only to review that number for substantial evidence. Doc. 21 at 16. In *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004), the Tenth Circuit explained the distinction between reviewing an ALJ's factual finding of significance and supplying a dispositive finding in the ALJ's place. There, most of the jobs the ALJ identified as existing in a significant number were jobs the claimant could not actually perform, given the claimant's RFC. *Id.* at 1143-44. "Because the ALJ erroneously relied upon 800 publicly interactive jobs, despite the direct conflict with his RFC findings, he never had occasion to decide if the one hundred surveillance jobs alone constituted a significant number under the statute." *Id.* Nonetheless, the Commissioner argued the ALJ's decision could be affirmed on the basis of harmless error. Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145. The Tenth Circuit declined to find harmless error, but observed that "[s]uch an approach might have been open to us here had the number of available jobs identified by the VE . . . been . . . considerably greater." *Id.*

As *Allen* also makes clear, however, when the court does not find any error in the ALJ's decision and instead reviews "a finding of numerical significance made by the ALJ," then the court is "not deciding in the first instance that a particular number was significant under the circumstances." *Id.* at 1144. "This court has made it clear that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation

should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (internal quotation marks and citation omitted); *see also Trimiar*, 966 F.2d at 1330-32 (factual determinations such as whether the number of jobs is significant "should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular situation" and the court does not "presume to interpose [its] judgment for that of the ALJ").

Because the ALJ here made a finding of numerical significance with respect to 51,000 jobs (AR 30), to accept Mr. Gonzales' argument, the Court would be concluding as a matter of law that 51,000 jobs is never significant and any ALJ who determines otherwise is an irrational factfinder. *Allen*, 357 F.3d at 1144; *see also Sears v. Berryhill*, No. 17-0391, 2018 WL 2002487, at *10-11 (D.N.M. Apr. 30, 2018). The Tenth Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a significant number. *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009); *Allen*, 357 F.3d at 1144 ("judicial line-drawing in this context is inappropriate"). This Court likewise declines to draw a bright line pursuant to which it will automatically remand a case depending on how many available jobs the VE identified.

Mr. Gonzales relies on *Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008), and *Chavez v. Barnhart*, 126 F. App'x 434 (10th Cir. 2005), which he claims stand for the proposition that remand is appropriate when the number of jobs is between 49,957 and 150,000. Significantly, however, both *Stokes* and *Chavez* were "harmless error" cases: because some error had been committed with respect to an identified job, the number of jobs left that the claimant can perform was a number that had not been analyzed by the ALJ for significance in the first instance. *Stokes*, 274 F. App'x at 684; *Chavez*, 126 F. App'x at 436. As the preceding discussion made clear, the

standard of review is thus very different. Neither *Stokes* nor *Chavez* offers guidance with respect to whether it is appropriate to affirm an ALJ's finding that 51,000 jobs is significant.

Even though the total number of jobs the ALJ identified is not high, the Court affirms the ALJ on substantial evidence review. This conclusion is consistent with other cases across the country in which courts have affirmed an ALJ's factual determination that even 10,000 jobs are numerically significant. *See, e.g.*, *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997); *see also Mills v. Berryhill*, No. 16-2209, 2017 WL 3494223 (W.D. Ark. Aug. 15, 2017) (12,562 jobs); *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 178 (W.D.N.Y. 2018) (9,046 jobs); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) (6,000 jobs); *Murray v. Berryhill*, No. 17-1086, 2018 WL 2159788, at *4-5 (D. Kan. May 10, 2018) (6,000 jobs). Giving the ALJ's factual determination the deference to which it is entitled, the Court finds that the ALJ committed no error in concluding that 51,000 jobs Mr. Gonzales could perform exist in the national economy and that this is a numerically significant amount.

Mr. Gonzales argues that this result is unjust, contending that he "lives in Socorro, a small town approximately eighty miles from Albuquerque" and cannot perform "a job that is isolated in a few areas of the country." Doc. 17 at 10. The law is clear, however, that the Commissioner satisfies its burden at step five by citing nationally available job numbers and is not required to produce regional job numbers. *Raymond*, 621 F.3d at 1274 ("[T]he controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy.").

> In tightening the definition of disability, Congress eliminated consideration of commuting difficulties as an influence on the disability determination. A person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience. Disability insurance is not available to fund his decision to live far from his job.

15

*Gravitt v. Apfel*, 185 F.3d 874, at *2 (10th Cir. 1999) (unpublished table decision) (quoting *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)). The Court affirms the ALJ's finding of numerical significance based on national job numbers.

## II. Conclusion

For the reasons stated above, Mr. Gonzales' Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum (Doc. 17) is **DENIED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**